

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 SEP 19 PM 3:44

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Jeffrey J. Izant*
*Assistant United States Attorney*
*jeffrey.izant@usdoj.gov*

*36 South Charles Street*
*Suite 400*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4982*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

August 2, 2018

Rebecca Talbott, Esq.
Assistant Federal Public Defender
Office of the Federal Public Defender
100 S. Charles Street, Tower II, Ninth Floor
Baltimore, Maryland 21201

**VIA ELECTRONIC MAIL**

Re:  United States v. Howard Keith Goodson, Crim. No. GLR-18-0288

Counsel:

This letter, together with the Sealed Supplement attached hereto, confirms the plea agreement (the "Agreement") that has been offered to your client, Howard Keith Goodson (hereinafter, the "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted **by Thursday, August 16, 2018,** it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offense of Conviction

1.  The Defendant agrees to plead guilty to Count One of the Indictment charging the Defendant with Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). The Defendant admits that he is, in fact, guilty of the offense and will so advise the Court.

## Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case proceeded to trial, are as follows:

a.  First, that on or about the dates charged, the Defendant knowingly persuaded, induced, enticed, or coerced Jane Doe to engage in sexual activity;

b.  Second, that the Defendant did so by using a facility or means of interstate or foreign commerce;

c.  Third, that Jane Doe was, at the time, less than eighteen years old; and

d.  Fourth, that the sexual activity was a criminal offense.

**Penalties**

3.     The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MIN / MAX IMPRISONMENT | MIN / MAX SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESSMENTS |
|-------|---------|------------------------|------------------------------|----------|---------------------|
| 1 | 18 U.S.C. § 2422(b) | 10 years (mandatory minimum) / life | 5 years (mandatory minimum) / life | $250,000 | 18 U.S.C. § 3013(a): $100; 18 U.S.C. § 3014(a): $5,000 |

        a.     *Prison*: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

        b.     *Supervised Release*: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

        c.     *Restitution*: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664.

        d.     *Payment*: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

        e.     *Forfeiture*: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

        f.     *Collection of Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method—nor a limitation on the methods—available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and to review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Sex Offender Registration

4.      The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crime to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act ("SORNA"), and the laws of the state of the Defendant's residence.  Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.      The Defendant understands that, by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

        a.      If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that the presumption could be overcome only by proof beyond a reasonable doubt.

        c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in his own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify.  If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

Rev. May 2018

f.       By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" provision below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.       If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in this case, and the Court will find the Defendant guilty.

h.       By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if he is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.       The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984, codified at 18 U.S.C. §§ 3551–3742 [excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)], and 28 U.S.C. §§ 991–98. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.       This Office and the Defendant stipulate and agree to: (i) the Statement of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt, and which is incorporated by reference herein, and (ii) the following applicable sentencing guidelines factors:

### Offense of Conviction/Group One:  Coercion and Enticement – 18 U.S.C. § 2422(b)

a.       *Base Offense Level*: Pursuant to U.S.S.G. §2G1.3(a)(3), the base offense level for coercion and enticement is 28.

b.       *Undue Influence*:  Pursuant to U.S.S.G. §2G1.3(b)(2)(B), there is a 2 level increase because a participant in the offense unduly influenced a minor to engage in prohibited sexual conduct.  [Subtotal 30.]

c.    *Use of Computer*:  Pursuant to U.S.S.G. §2G1.3(b)(3)(A), there is a 2 level increase because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct. [Subtotal 32.]

d.    *Sexual Act*:  Pursuant to U.S.S.G. §2G1.3(b)(4)(A), there is a 2 level increase because the offense involved the commission of a sex act or sexual contact.  [Subtotal 34.]

Relevant Conduct/Group Two:  Sexual Exploitation of a Child – 18 U.S.C. § 2251(a)

e.    The Statement of Facts set forth in Attachment A to this Agreement specifically establishes the commission of additional offenses other than that to which the Defendant has agreed to plead guilty.  Pursuant to U.S.S.G. §1B1.2(c), those additional offenses are treated as if the Defendant had been convicted of additional counts charging those offenses.

f.    *Base Offense Level*:  Pursuant to U.S.S.G. §2G2.1(a), the base offense level for sexual exploitation of a child is 32.

g.    *Minor Under 16*:  Pursuant to U.S.S.G. §2G2.1(b)(1)(B), there is a 2 level increase because the offense involved a minor who had attained the age of twelve years but not attained the age of sixteen years.  [Subtotal 34.]

h.    *Sexual Act*:  Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a 2 level increase because the offense involved the commission of a sexual act or sexual contact.  [Subtotal 36.]

i.    *Use of Computer*:  Pursuant to U.S.S.G. §2G2.1(b)(6)(B)(ii), there is a 2 level increase because the offense involved the use of a computer or an interactive computer service to solicit participation with a minor in sexually explicit conduct.  [Subtotal 38.]

j.    The adjusted offense level is 38.

Relevant Conduct/Group Three: Travel with Intent to Engage in
Illicit Sexual Conduct – 18 U.S.C. § 2423(b)

k.    *Base Offense Level*: Pursuant to U.S.S.G. §2G1.3(a)(4), the base offense level for travel to engage in prohibit sexual conduct with a minor is 24.

l.    *Undue Influence*:  Pursuant to U.S.S.G. §2G1.3(b)(2)(B), there is a 2 level increase because a participant in the offense unduly influenced a minor to engage in prohibited sexual conduct.  [Subtotal 26.]

m.    *Use of Computer*:  Pursuant to U.S.S.G. §2G1.3(b)(3)(A), there is a 2 level increase because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct. [Subtotal 28.]

n.      *Sexual Act*:  Pursuant to U.S.S.G. §2G1.3(b)(4)(A), there is a 2 level increase because the offense involved the commission of a sex act or sexual contact.  [Subtotal 30.]

Relevant Conduct/Group Four: Possession of Child Pornography – 18 U.S.C. § 2252(a)(4)(B)

o.      *Base Offense Level*: Pursuant to U.S.S.G. §2G2.2(a)(1), the base offense level for possessing material involving the sexual exploitation of a minor is 18.

p.      *Pattern of Activity*:  Pursuant to U.S.S.G. §2G2.2(b)(5), there is a 5 level increase because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.  [Subtotal 23.]

q.      *Use of Computer*:  Pursuant to U.S.S.G. §2G2.2(b)(6), there is a 2 level increase because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material.  [Subtotal 25.]

## Grouping

r.      The government contends that, pursuant to U.S.S.G. §3D1.2(b) and (d), the relevant conduct offenses are grouped together; the conduct of conviction is not.  It is the Defendant's position that all conduct should be grouped into a single group per §3D1.2(b).

s.      The government contends that, pursuant to U.S.S.G. §3D1.3(a) and U.S.S.G. §3D1.4, the starting point for calculating the combined offense level is 38, derived from Group Two.

t.      The government contends that, pursuant to U.S.S.G. §3D1.4(a), Groups One and Two get 1 additional Unit each, and Group Three gets ½ Unit. Group Four is disregarded under U.S.S.G. §3D1.4(c). Therefore, there are 2 ½ Units, so 3 levels are added under U.S.S.G. §3D1.4.

u.      The government contends that the combined offense level is 41.  The Defendant's position is that the combined offense level is 38.

## Enhancements

v.      *Obstruction of Justice*: Pursuant to U.S.S.G. §3C1.1, there is a 2 level increase because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction.

w.      *Repeat and Dangerous Sex Offender Against Minors*: Pursuant to U.S.S.G. §4B1.5(b)(1), there is a 5 level increase because the defendant's instant offense of conviction is a covered sex crime, neither U.S.S.G. §§4B1.1 nor 4B1.5(a) applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct.

### Acceptance of Responsibility

x.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's acceptance of personal responsibility for his conduct.  This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

y.      The government contends that, pursuant to U.S.S.G. Ch. 5, Pt. A, cmt. 2, the final combined offense level is 43.  The Defendant's position is that the final combined offense level is 42.

8.      There is no agreement as to the Defendant's criminal history and the Defendant understands that his criminal history could alter his offense level.  Specifically, the Defendant understands that his criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of his income.

9.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### **Obligations of the Parties**

10.     At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).  This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that either party deems relevant to sentencing, including the conduct that is the subject of the Information.  At the time of sentencing, this Office will move to dismiss the Indictment against the Defendant.

### **No Contact with Jane Doe**

11.     While incarcerated and throughout the entire term of his imprisonment, the Defendant will not: (a) make any contact with Jane Doe, as identified in the attached Statement of Facts, or the immediate family of Jane Doe, or (b) take any steps whatsoever to locate Jane Doe, or the

Rev. May 2018

immediate family of Jane Doe. The Defendant agrees to the entry of a Protective Order regarding any contact with Jane Doe or her immediate family. The Defendant specifically agrees that this provision shall continue following his release and will be part of any supervised release conditions ordered by the Court at the time of sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of the Agreement, and this Office may seek to be relieved of its obligations thereunder. The Defendant waives and agrees to waive any right to challenge any prosecution based on the statute of limitations or double jeopardy, and knowingly and voluntarily agrees to toll the limitations period through the end of his incarceration and supervised release.

## Forfeiture

12.    a.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

   b.    Specifically, but without limitation on the government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: a black Apple iPhone X, IMEI: 356722088271019.

   d.    The Defendant agrees to consent to the entry of an Order of Forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

   e.    The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

   f.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds, brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Rev. May 2018

### Restitution

13.     The Defendant agrees that, under 18 U.S.C. §§ 2259, 3663A, and 3771, the child identified in the Information as Jane Doe is entitled to mandatory restitution. The restitution could include medical bills, compensation for time missed from work, and counseling costs (including travel) for any of the victim related to the incident, if any such costs exist or are reasonably projected. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. The Defendant will make a good faith effort to pay any restitution. Regardless of the Defendant's compliance, any payment schedule does not limit the United States's ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Waiver of Appeal

14.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all rights, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all rights to appeal the Defendant's conviction on the ground that the statutes to which the Defendant is pleading guilty are unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statutes, to the extent such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

(i)     The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

(ii)     This Office reserves the right to appeal any sentence below the statutory minimum.

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of this case and agrees not to file any request for documents from this Office or any investigating agency.

## Defendant's Conduct Prior to Sentencing and Breach

15.     a.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor this Office will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Consequences of Vacatur, Reversal, or Set-Aside

16.     If a conviction entered pursuant to this Agreement is vacated, reversed, or set aside for any reason, then this Office will be released from its obligations under this Agreement, and any prosecution that is not time-barred as of the date of the signing of this Agreement (including any counts this Office has agreed to dismiss) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. The Defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this Agreement is signed, and any applicable statute of limitations will be tolled from the date of this Agreement until 120 days after the vacatur, reversal, or set aside becomes final. The Defendant further agrees to waive any defenses based on double jeopardy, pre-indictment delay, or the Speedy Trial Act.

## Court Not a Party

17.     The Court is not a party to this Agreement.  The sentence to be imposed is within the sole discretion of the Court.  The Court is not bound by the Sentencing Guidelines stipulation in this Agreement.  The Court will determine the facts relevant to sentencing.  The Court is not required to accept any recommendation or stipulation of the parties.  The Court has the power to impose a sentence up to the maximum penalty allowed by law.  If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of his obligations under this Agreement.  Neither the prosecutors, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive.  The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18.     This letter, together with the Sealed Supplement attached hereto, constitutes the complete plea agreement in this case.  This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant.  There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement.  No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

        If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to this Office promptly.

Sincerely,

Robert K. Hur
United States Attorney

By:

Jeffrey J. Izant
Judson T. Mihok
Assistant United States Attorneys

        I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney.  I understand it and I voluntarily agree to it.  Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

9-19-18
Date

Howard Keith Goodson

Rev. May 2018

I am the Defendant's attorney.  I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant.  The Defendant advises me that he understands and accepts its terms.  To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

9/19/18

Date

Rebecca Talbott, Esq.

## ATTACHMENT A

## STATEMENT OF FACTS

*The undersigned parties stipulate and agree that, if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant, Howard Keith Goodson, age 49, is a former resident of Hatfield, Pennsylvania. Goodson owned and operated a blue 2009 Dodge Ram 1500 pickup truck, with VIN: 1D3HV13T29J521641, and bearing Pennsylvania registration YMN9357.

"Jane Doe" is the pseudonym of a minor female victim. At all times relevant, Jane Doe was 15 years old and resided in Maryland, where she attended the ninth grade.

### I.    Goodson's Coercion and Enticement of Jane Doe

In late 2016 or early 2017, Goodson met Jane Doe on the social media website, "Tumblr," where Doe hosted a blog. Goodson and Doe began communicating on Tumblr, but eventually corresponded through phone calls, text messages, and "Kik," a smartphone-based messaging application; each communication platform involved a facility or means of interstate commerce.

The nature of much of Goodson's communication with Jane Doe was consistent with a Bondage, Discipline, Sadism, Masochism ("BDSM") relationship, in which the dominant partner employs psychological control over the submissive partner. For example, between October 2017 and January 2018, Goodson sent the following messages to Doe:

| Date | Time | Platform | Message |
|---|---|---|---|
| 10/19/2017 | 2:44 p.m. (UTC-5) | Text | That little pussy knows your Daddy's girl and it is for Daddy to fuck |
| | 3:02 p.m. (UTC-5) | Text | No I'll stop when I've had enough and am ready to fuck you like a good |
| | 3:04 p.m. (UTC-5) | Text | Your not 2 your my baby girl and yes Daddy is gonna make love to you but also fuck you like his personal little slut |
| | 5:08 p.m. (UTC-5) | Text | Pick you up holding you in the air your legs around my waist as I fuck you till you coat me in your cum and juices |
| | 7:40 p.m. (UTC-5) | Text | I want to play taste and fuck you |
| 10/22/2017 | 9:02 p.m. (UTC-5) | Text | My dominance over you is only as strong as you allow it to be and time and time again you took away my dominance by refusing to do what you were told by |

1

| | | | |
|---|---|---|---|
| 10/24/2017 | 7:54 a.m. (UTC-5) | Text | How I want to taste you make you cum over and over then fuck my baby girl and show her how Daddy fucks a grown woman |
| 12/23/2017 | 5:51 p.m. (UTC-5) | Text | Part of you want to be made love to but part of you also wants to be just fucked hard and not given a say or choice |
| | 6:29 p.m. (UTC-5) | Text | Not calling you on but for lack of better description bent over the bed and fucked like a naughty girl and little slut. |
| 12/25/2017 | 5:07 p.m. (UTC-5) | Text | I want to fuck the hell out of you right now |
| 1/23/2018 | 6:20 p.m. (UTC-5) | Text | Then me telling you how badly I want to lick and suck your pussy and |
| | 6:23 p.m. (UTC-5) | Text | Feeling my tongue darting in and out of you as it fucks you. While my lips suck on you |

## II.  Goodson's Interstate Travel and Sexual Exploitation of Doe

Between January and April 2018, Goodson drove from Pennsylvania to Maryland to meet Jane Doe on at least four occasions.  On at least three of those occasions, Goodson traveled for the purpose of engaging in illicit sexual conduct with Doe.

Goodson first met Jane Doe in person on or about January 25, 2018, when Goodson drove from Pennsylvania to Maryland to meet Doe at a high school track meet that she was attending.

Throughout February 2018, Goodson continued to communicate with Jane Doe in a manner that reflected a BDSM relationship.  For example, Goodson sent the following messages to Doe via text message and Kik:

| Date | Time | Platform | Message |
|---|---|---|---|
| 2/2/2018 | 9:03 p.m. (UTC-5) | Text | I think that booty just need fucked and pumped full of cum again |
| 2/3/2018 | 9:13 a.m. (UTC-5) | Text | Does baby girl want Daddy to fuck that pussy again? |
| | 9:14 a.m. (UTC-5) | Text | For Daddy to fuck her ass again and cummie in it again?  Filling her little ass so full |
| | 2:44 p.m. (UTC-5) | Text | I wanna fuck my little girl again soon |
| 2/9/2018 | 9:45 a.m. (UTC-5) | Text | We will try again tomorrow.  When you wanna talk to me like you give a fuck about this relationship let me know. |
| 2/10/2018 | 7:51 p.m. (UTC+0) | Kik | Baby girl I want you to start following your rules.  Okay? |
| | 7:53 p.m. (UTC+0) | Kik | I don't want to have to punish my baby girl but if their not followed I'm going to.  Okay? |
| | 8:09 p.m. (UTC+0) | Kik | And yeah I know what me correcting you is doing to your pretty little girl place |
| | 8:10 p.m. (UTC+0) | Kik | My little kitten is tingling isn't it |

2

|           | 8:11 p.m. (UTC+0) | Kik | No fibbing |
|           | 8:12 p.m. (UTC+0) | Kik | Now tell Daddy Legit |
|           | 8:13 p.m. (UTC+0) | Kik | No petting it without asking baby girl |
| 2/11/2018 | 2:18 a.m. (UTC+0) | Kik | Didn't like it when Daddy light spanked your kitty? |
|           | 2:19 a.m. (UTC+0) | Kik | But you got so wet from it baby girl |
|           | 2:21 a.m. (UTC+0) | Kik | Your body knew what it wanted and liked |
|           | 2:22 a.m. (UTC+0) | Kik | Kind of like how it loved the feel of me fucking and Cumming in your hot little ass baby girl |
|           | 2:24 a.m. (UTC+0) | Kik | It got really wet when I spanked that kitty and even more so when I was fucking that ass. Didn't it? |
|           | 2:26 a.m. (UTC+0) | Kik | But just remembering right now has my little girl getting wet isn't it |
|           | 2:28 a.m. (UTC+0) | Kik | Does baby girl remember how it felt when Daddy was pumping his cummie into her |
|           | 2:30 a.m. (UTC+0) | Kik | Do you remember how it felt |

## A.   Sexual Exploitation of Doe

On or about February 13, 2018, Goodson drove from Pennsylvania to Maryland to meet Jane Doe again. They met at her residence, where Goodson engaged in sexual intercourse with Doe. During that encounter, Goodson produced the following four images of Doe engaged in sexually explicit activity:

1.  **[B697CF1E-CD5D-4393-A33A-D62C97162CC0.jpg]** – The image is date and timestamped 02.13.2018 at 12:04 hours, and depicts—from above—Goodson's penis entering Jane Doe's vagina from the rear.

2.  **[305C6F0F-45C9-4C85-9144-333E7459125D.jpg]** – The image is date and timestamped 02.13.2018 at 13:46 hours, and depicts the backside of Jane Doe as she is bending over the edge of her bed. Doe is nude from the torso down and is pulling apart her buttocks, revealing her anus and vagina.

3.  **[B985A1AB-0091-4305-AC59-28BF2D2447A2.jpg]** – The image is date and timestamped 02.13.2018 at 13:47 hours, and depicts the backside of Jane Doe as she is bending over the edge of her bed. Doe is nude from the torso down, and the image is focused on her buttocks, which have red marks caused by Goodson repeatedly striking Doe's buttocks with an open palm.

4.  **[F29974B6-DE45-4551-B0A7-AA0BD7647D23.jpg]** – The image is date and timestamped 02.13.2018 at 13:51 hours, and depicts the backside of Jane Doe as she is bending over the edge of her bed.

Doe is nude from the torso down, and the image is focused on her buttocks, on top of which is a creamy white substance that appears to be male semen.

Goodson produced the images in Maryland using his smartphone, a black Apple iPhone X, with IMEI: 356722088271019, which was manufactured outside Maryland and, therefore, had been mailed, shipped, or transported in or affecting interstate or foreign commerce.

### B.    Further Interstate Travel and Coercion and Enticement of Doe

Between March and April 2018, Goodson continued to communicate with Jane Doe in a manner that reflected a BDSM relationship.  For example, Goodson sent the following messages to Doe via text message and Kik:

| Date | Time | Platform | Message |
|------|------|----------|---------|
| 3/2/2018 | 12:59 p.m. (UTC-5) | Text | Is daddy making his little girl a naughty little fuck? |
| | 1:05 p.m. (UTC-5) | Text | Spanking her cute little ass and fucking her hot little holes? |
| 3/6/2018 | 7:08 a.m. (UTC-5) | Text | Does my little girl want daddy to come fuck her? |
| 3/7/2018 | 3:51 p.m. (UTC-5) | Text | No one knowing how sore that pussy is from the fucking it just took. Or how that ass is still dripping my cum from it as we walked around |
| | 4:35 p.m. (UTC-5) | Text | I asked this twice and you never responded to it..... |
| | | | Want daddy to fuck your little holes like a good little slut then take his little girl to the mall? |
| 3/12/2018 | 1:11 a.m. (UTC+0) | Kik | As far as a tattoo goes that you're going to have to wait a little while because no artist will give you one being under age without parental consent |
| | 1:24 a.m. (UTC+0) | Kik | Who do you belong to |
| | | | Who's property are you |
| | 1:25 a.m. (UTC+0) | Kik | What happens or is done to my little girl or my property without my permission |
| | 1:26 a.m. (UTC+0) | Kik | Are you allowed to get a tat or a piercing without my approval and permission first? |
| 3/15/2018 | 5:41 p.m. (UTC-4) | Text | Baby girl Daddy gonna fuck you like a naughty little slut |
| 3/16/2018 | 10:13 p.m. (UTC-4) | Text | "Hold the fuck still, I'm not done with you yet" I tell you |
| 3/20/2018 | 11:28 p.m. (UTC-4) | Text | Next time we have more time you will be fucked used and marked like you never have been before |

4

| | | | |
|---|---|---|---|
| 4/2/2018 | 10:12 p.m. (UTC-4) | Text | Want Daddy to come fuck you baby girl? |
| 4/5/2018 | 11:28 a.m. (UTC-4) | Text | I wanna fuck you so bad and so hard |

On April 6, 2018, Goodson drove from Pennsylvania to Maryland to meet Jane Doe again. That day, Goodson sent the following text messages to Doe:

| Date | Time | Platform | Message |
|---|---|---|---|
| 4/6/2018 | 12:33 p.m. (UTC-4) | Text | It's probably a good thing that your brother was there today otherwise it would've probably been a lot worse<br>Are the bite marks still there? |

In April 2018, Goodson continued to communicate with Jane Doe in a manner that reflected a BDSM relationship. For example, Goodson sent the following text messages to Doe:

| Date | Time | Platform | Message |
|---|---|---|---|
| 4/12/2018 | 10:04 p.m. (UTC-4) | Text | Did you like the feel of my belt? |
| | 10:18 p.m. (UTC-4) | Text | You know what to do.  You know your Daddy's good little fuck. |

### III.    Goodson's April 16, 2018, Interstate Travel and Arrest

On April 16, 2018, Goodson drove from his residence in Pennsylvania to Maryland to meet Jane Doe again.  Goodson drove to Doe's school and picked her up before driving the two of them to Doe's residence.  There, Goodson and Doe proceeded to Doe's bedroom, where they engaged in oral sex and vaginal intercourse.

Shortly thereafter, Jane Doe's mother arrived at the residence, expecting to find her daughter home alone.  But when she observed Goodson exit the residence and enter a blue Dodge Ram with Pennsylvania license plates, Doe's mother called 911 to report what she had seen, and began following Goodson in her vehicle.  Doe's mother also called Doe's father and relayed her location, permitting Doe's father to block the road ahead of where Goodson was driving, forcing Goodson to pull over.  After pulling over, Goodson sent the following message to Jane Doe:

| Date | Time | Platform | Message |
|---|---|---|---|
| 4/16/2018 | 8:14 p.m. (UTC+0) | Kik | Delete everything.  They stopped me.  Your mom |

A few minutes later, law enforcement officers arrived, and asked Goodson whether he had been at Jane Doe's residence earlier that day.  Goodson stated falsely that he was in the area to look for a vehicle that was being sold online, but could not find it.  Goodson voluntarily agreed, however, to leave his car and be transported back to Doe's residence.  There, officers advised Goodson of his *Miranda* rights, which Goodson voluntarily waived.  Officers interviewed Goodson again; this time, Goodson acknowledged that he had been inside Doe's residence that day and had engaged in sexual intercourse with Doe.

5

Goodson was then transported to the county sheriff's office, where he was Mirandized a second time and questioned by law enforcement officers. In a recorded interview, Goodson stated, among other things, that: (a) he originally met Jane Doe on Tumblr; (b) they had been communicating for approximately one-and-a-half years; (c) they met in person on four occasions; and (d) they had engaged in the sexual conduct described above in Sections II and III. Goodson also acknowledged knowing that Doe was a minor, and stated that he believed Doe was 15 or 16 years old.

Goodson was arrested following the interview. Upon a search of Goodson's person and vehicle incident to his arrest, officers recovered a vibrator from the pocket of his jacket. Officers obtained a warrant to search the vehicle Goodson was driving—the blue 2009 Dodge Ram—and recovered a number of anal plugs from the interior of the vehicle.

Law enforcement later obtained a warrant to search the black Apple iPhone X, with IMEI: 356722088271019, which Goodson voluntarily relinquished upon encountering the police. Through a forensic review conducted pursuant to that warrant, officers recovered the four images of Jane Doe engaging in sexually explicit conduct described above, including metadata indicating that the images had been modified by the Tumblr smartphone application on or about April 14, 2018. Additionally, officers recovered a Kik profile with the account name "Master K," and hundreds of Kik messages between Master K and Doe. Officers also recovered a Tumblr account with the username "notyourdaddydom," as well as multiple BDSM-related communications with several unknown Tumblr users.

SO STIPULATED:

Jeffrey J. Izant
Judson T. Mihok
Assistant United States Attorneys

Howard Keith Goodson
Defendant

Rebecca Talbott, Esq.
Counsel for Defendant

6